IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JAMES WILSON,
        Plaintiff,

-vs-                                                  Case No. A-10-CA-160-SS

SYSTEMS & PROCESSES ENGINEERING
CORPORATION and RANDOLPH E. NOSTER,
        Defendants.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Systems and Processes Engineering Corporation ("SPEC") and Randolph E. Noster ("Noster")'s Rule 12(b)(6) Motion to Dismiss, or Alternatively, Motion for Summary Judgment ("Def. Mot. SJ") [#20], Plaintiff James Wilson ("Wilson")'s response ("Pl. Resp.") [#26] thereto, and SPEC's reply [#32]; and Wilson's Motion for Continuance of Defendants' Motion to Dismiss or Alternatively Motion for Summary Judgment [#23], and Defendants' response [#30] thereto. Having reviewed the motions, the relevant case law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

Wilson is suing his former employer SPEC, and Noster as SPEC's president, for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. Wilson claims that during one or more weeks between his starting date of July 1, 2003 and his ending date of January 18, 2010, he worked over forty hours without any overtime compensation. Wilson is requesting

relief in the form of the overtime pay he alleges SPEC[1] denied him, liquidated damages in the same amount, and reasonable attorney's fees, as provided by the FLSA.

SPEC counters by saying, among other things, that Wilson was exempt from the provisions of the FLSA by virtue of 29 U.S.C. § 213, which excepts from the hour and wage requirements "any employee employed in a bona fide executive, administrative, or professional capacity."

SPEC filed a motion asking for the Court to dismiss Wilson's complaint or in the alternative to grant summary judgment in their favor. SPEC's motion is based on the argument that Wilson was paid on a salary basis and was a highly compensated employee, thereby making him exempt from the overtime provisions of the FLSA. Wilson filed a reply challenging these claims on various grounds. Wilson separately filed a motion to continue SPEC's motion on the grounds that he could not adequately reply until he received discovery from SPEC. Unsurprisingly, SPEC filed a reply indicating such a continuance was unnecessary.

The Court feels it has sufficient evidence to rule on SPEC's motion for dismissal or summary judgment, and for the following reasons, SPEC's motion is DENIED. Accordingly, Wilson's motion is DISMISSED as moot.

## Analysis

**1.    Legal Standards**

**a.    12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A

---

[1] Although Wilson brings this suit against both SPEC as a company and Noster as its president, the Court's analysis is the same for both Defendants. Thus, for simplicity, the Court will simply refer to Defendants as SPEC.

motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense." *Id.* at 1950. Where, as here, a defendant bases a motion to dismiss on an affirmative defense, the affirmative defense must appear from the face of the pleadings and judicially noticed facts. *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Co. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

b.      **Summary Judgment**

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding

summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial, and may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256–57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the non-movant's burden. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

**2.   Fair Labor Standards Act, 29 U.S.C. §§ 200–217**

**a.   Background**

Deciding if an employee is exempt from the provisions of the FLSA requires both factual findings and an ultimate legal conclusion. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330–31 (5th Cir. 2000). The primary focus of the inquiry is on facts—both "historical facts" about the specifics of the plaintiff's employment, and factual inferences drawn from them. *Id.* at 331. However, the ultimate conclusion, based on those facts and inferences, whether an employee

is exempt, is a question of law. *Id.* The fact question at the heart of this case is whether or not SPEC paid Wilson on a salary basis. Because the Court finds there is a genuine issue of material fact on this question, it DENIES SPEC's motion.[2]

Wilson claims SPEC violated the FLSA by denying him overtime compensation during his employment. The FLSA provides that, in general, an employer must pay an employee one-and-a-half times his or her regular pay rate for work done in excess of forty hours per week. 29 U.S.C. § 207. However, the FLSA is replete with exceptions.[3] The important exception in this case is contained in § 213(a)(1), which indicates "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the FLSA's minimum wage and maximum hours requirements. 29 U.S.C. § 213(a)(1). SPEC contends Wilson was exempted from coverage under the FLSA—and therefore his suit should be dismissed or summary judgment should be granted in its favor—because he was employed in a bona fide executive capacity.

### b.     "Bona fide executive capacity"

Pursuant to Congress' grant of authority, the Secretary of Labor has promulgated extensive and complex regulations interpreting the FLSA generally and this exemption in particular. 29 U.S.C. § 204. Under the Secretary's regulations, an employee is deemed to be employed "in a bona fide executive capacity" if: (1) he or she is compensated "*on a salary basis* at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities"; (2) his or her "primary duty is

---

[2] The Court easily finds that Wilson's pleadings have not established SPEC's affirmative defense that Wilson is exempt. Indeed, SPEC does not even seriously address this argument in its brief. Therefore, the Court denies the motion on those grounds and focuses its analysis on SPEC's summary judgment arguments.

[3] For instance, neither the FLSA's minimum wage or maximum hour requirements apply to sponge-catchers, 29 U.S.C. § 213(a)(5), or amateur babysitters, § 213(a)(15); nor does the maximum hour requirement apply to poultry buyers, § 213(b)(5); maple sap processors, § 213(b)(15); movie theater employees, § 213(b)(27); or tree planters if and only if they have seven or fewer co-workers, §213(b)(28).

management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (3) he or she "customarily and regularly directs the work of two or more other employees"; and (4) he or she "has the authority to hire or fire other employees or whose suggestions . . . are given particular weight." 29 C.F.R. 541.100(a) (emphasis added). For the sake of brevity, the Court adopts SPEC's nomenclature and refers to this as the "duties test."

SPEC alleges that Wilson meets some, but not all, of the duties test criteria.[4] Specifically, SPEC does not claim Wilson regularly directed other employees, nor that he had the authority to hire or fire. However, based on the duties he did perform, SPEC maintains Wilson was exempt under a separate regulation: the "highly compensated employee" regulation.

c.  **"Highly compensated employee" and "Total annual compensation"**

Under the "highly compensated employee" regulation, an employee with a "total annual compensation" of at least $100,000 per year is exempt from the FLSA if he or she regularly performs at least one of the duties outlined in the duties test. 29 C.F.R. 541.601(a). "Total annual compensation" must, at a minimum, "include at least $455 per week paid *on a salary or fee basis.*" *Id.* § 541.601(b) (emphasis added).[5]

As indicated by the Court's emphases above, exemption under both the duties test and the highly compensated employee regulation requires that the employee be paid on a salary basis. Here is where the parties vehemently disagree. SPEC contends that Wilson was paid an annual salary that

---

[4] SPEC also argues, unconvincingly, that Wilson has admitted he falls under this exception because he states in his complaint that he worked for SPEC as a "business development executive." Complaint [#1] at ¶ 6. However, Department of Labor regulations specifically say that "job title alone is insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2.

[5] Of course, one payment every week is not required, so long as payment is no more frequent than once a week and a proportional amount is paid based on payment frequency. 29 C.F.R. § 541.600.

was converted into an hourly rate on his paycheck and other documents primarily for compliance with government billing requirements. Because Wilson does not dispute that he was paid more than $100,000, nor that he regularly performed at least one of the duties described in the duties test, SPEC concludes Wilson was exempt.[6]

Wilson, by contrast, argues that he was paid an hourly rate that SPEC converted into an annual salary on some documents. Thus, Wilson asserts, he was not paid "on a salary basis,"—regardless of the total amount of his compensation—and therefore was not exempt.

d.   **"Salary basis"**

Luckily, the regulations also define "salary basis":

> (a) General rule. An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work. An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

29 C.F.R. § 541.602. As the text above indicates, there are also exceptions to this rule. Thankfully, none of them apply to this case.

---

[6] SPEC correctly points out that reducing an annual salary into an hourly rate does not automatically make an exempt employee non-exempt. 29 C.F.R. § 541.604(b). However, this does not obviate the need for the employee's pay to be on a salary basis in the first place. *Id.*

One main area of contention between the parties is whether Wilson was paid a predetermined amount regardless of quantity or quality of work performed. SPEC provides evidence that Wilson was paid an annual salary regardless of the number of hours he worked. Wilson notes much of SPEC's evidence can also be interpreted to support his contention that he was paid on an hourly basis. Indeed, the recurring theme of the documentary evidence provided by SPEC is ambiguity: hours and hourly rates are reported, but not in a way that precludes the possibility of a salary.

For instance, SPEC includes as an exhibit Wilson's employment offer letter, in which SPEC indicated his "salary would be computed at the hourly rate of $33.70 which corresponds to an annual rate of $70,064." Def. Mot. SJ, Ex. B ("Offer Letter"). The offer letter went on to state that "[a]fter 90 days of employment, [Wilson's] rate will be increased to $43.30 per hour/$90,064 per year." *Id.* This letter could either have meant that Wilson was expected to work 40 hours per week, 52 weeks per year, and would be paid $33.70 or $43.30 for each hour; or that he would receive a flat annual salary of $70,064 or $90,064, which would ultimately come out as $33.70 or $43.40 per hour, for 52 theoretical 40-hour work weeks.[7]

Similarly, SPEC's Exhibit D is a "Payroll Change Form" for Wilson, dated December 1, 2006. Def. Mot. SJ, Ex. D. This form reflected Wilson's "Current Hourly Earnings" were "50.00" and his "Changed Hourly Earnings" were "40.00". *Id.* However, under "Other Notes," the form indicated "Temporary Senior Staff Salary Reduction." *Id.* Again, this form does not shed definitive

---

[7] In the case of $90,064, the math comes out nicely whether one begins with an hourly rate and computes an annual salary, or vice versa.. However, the Court notes that the $70,064 does not, regardless of which way it is computed and taking into account rounding errors. That is, rounded to the nearest hundredth: $70,064 / (52 * 40) = 33.68$; and $33.70 * 40 * 52 = 70,096$. However, this mathematical puzzle does not help answer the underlying question.

light on the question of whether Wilson was paid a traditional salary, or if he was paid an hourly rate that was extrapolated into an annual dollar figure termed a salary.

Likewise, SPEC's Exhibit E is an untitled document dated July 1, 2007, concerning the reduction of payroll expenses. Def. Mot. SJ, Ex. E at 1–2. This document reflected Wilson's "Hourly Pay Rate" was $50.00, and that he was authorized to work 32 hours per week. *Id.* at 1. It further indicated that upon the completion of certain milestones, his weekly hours would be raised first to 36, then returned to 40. *Id.* SPEC's Exhibit F is a "Payroll Change Form" dated September 10, 2007, indicating the completion of one milestone and the related increase of Wilson's weekly hours from 32 to 36. Def. Mot. SJ, Ex. F. SPEC explains this was merely a "book keeping matter" to reflect a reduction in Wilson's annual salary. Wilson, of course, suggests these forms should be taken at face value to show that he was paid hourly. The Court finds the documents consistent with both parties' contentions.

Without going into further detail, the Court finds SPEC's Exhibits G, H, I, and J do not dispose of the question or shed significant light on it.[8] The evidence provided is reasonably consistent with the contentions of both SPEC and Wilson. Full discovery and an opportunity to assess the credibility of the parties are required to reach a well-founded conclusion; obviously, these requirements are not consistent with the granting of a motion to dismiss or a motion for summary judgment. Thus, the Court concludes there is a genuine issue of material fact regarding whether Wilson was paid on a salary basis, and must deny SPEC's motion.

---

[8] Exhibit G is a letter reflecting Wilson's "furlough" in 2009, and it referred only to his hours and hourly pay. Exhibit H is a compilation of Wilson's "gross earnings reports" dating from January 1, 2007 to January 31, 2010. It referred to his hourly rate, "pay period" hours, "guaranteed gross," and "paid gross." Exhibit I reflects SPEC's pay periods, with mention of neither hourly rate nor salary. Exhibit J are Wilson's pay stubs from 2007 through 2010. They referred to hours and a "pay rate," which appears to be in dollars per hour.

e.  **"Improper deductions"**

As an alternative grounds for finding him not exempt, and in further support of his claims that he was not paid on a salary basis, Wilson offers evidence that on one occasion he received an hourly-rate deduction from his pay when he worked two hours fewer than prescribed in a given pay period; and that his wife, who also worked for SPEC in an executive capacity, received such deductions on fourteen occasions in a three-year period. Wilson claims even if he was paid on a salary basis and would therefore normally be an exempt employee, his underpayment constitutes an "improper deduction" under FLSA regulations.

The "improper deductions" regulation states, in part:

> (a) An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis. . . .
> . . .
> (b) If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions. . . .
> . . .
> (c) Improper deductions that are either isolated or inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions.
> . . .
> (d) If an employer has a clearly communicated policy that prohibits the improper pay deductions specified in § 541.602(a) and includes a complaint mechanism, reimburses employees for any improper deductions and makes a good faith commitment to comply in the future, such employer will not lose the exemption for any employees unless the employer willfully violates the policy by continuing to make improper deductions after receiving employee complaints. . . .

29 C.F.R. § 541.603. Wilson argues the evidence of pay deductions for partial workdays establishes an "actual practice" of making improper deductions. Therefore, he asserts, even if he did qualify as an exempt employee, SPEC lost the exemption because of its misconduct. Wilson has attached two letters to his response, one addressed to him and one addressed to his wife, that purport to be from SPEC. Pl. Resp., Wilson Ex. D, Foster Ex. B. In the letters, SPEC acknowledges the underpayments, but refers to them as "inadvertent deductions," and indicates they were caused by the employees' failures to provide correct information on their time sheets.

Because the Court has already determined that whether Wilson was paid on a salary basis is a genuine issue of material fact, the Court need not decide this question.[9] If Wilson was not paid on a salary basis, he was neither employed in a "bona fide executive capacity" as defined by 29 C.F.R. § 541.100(a), nor was he a "highly compensated employee" under 29 C.F.R. § 541.601. Consequently, assuming Wilson was not paid on a salary basis, he was not exempt under the FLSA and the question of improper deductions is irrelevant.[10]

## Conclusion

SPEC argues Wilson is exempt under the FLSA because he was employed in a bona fide executive capacity. To establish this, SPEC contends Wilson regularly performed at least one of the duties described in the duties test and received total annual compensation over $100,000. Wilson's

---

[9] The Court notes that if it were to reach this question, there are also potentially significant questions about the time frame in which SPEC would lose the exemption, whether Wilson and his wife shared the same manager, whether SPEC's attempt to repay Wilson years after the fact constitutes sufficient reimbursement, and whether SPEC qualified for the "safe harbor" provisions of 29 C.F.R. § 541.603(d).

[10] Wilson also argues his 2009 furlough represents an improper deduction and an attempt to evade the salary basis requirement. Because the Court has already found there is a fact issue regarding whether Wilson was paid on a salary basis, this issue is also irrelevant here.

"total annual compensation" is greater than $100,000, SPEC claims, because Wilson was paid a guaranteed salary regardless of the quality or quantity of his work.

SPEC has provided a great deal of evidence in support of its arguments, but most of the evidence cuts both ways. SPEC makes non-frivolous arguments based on a plausible interpretation of that evidence. However, that is not sufficient to satisfy the legal standards this Court must apply. The Court can only dismiss Wilson's case if he has failed to plead the required elements—which SPEC does not suggest is the case—or if Wilson's pleadings also establish an affirmative defense for SPEC, which his pleadings have not done. The Court can only grant summary judgment against Wilson if there is no genuine issue of material fact and if SPEC is entitled to judgment as a matter of law. However, both parties devote many pages to arguing plausibly whether Wilson was paid on a salary basis, and both parties rely on much of the same evidence in doing so.

SPEC's motion is full of argument, and not all of it is bad. But arguments about how ambiguous data should be interpreted are more properly directed to a jury than to this Court. Because there is a genuine issue of material fact regarding whether Wilson was paid on a salary basis, the Court DENIES SPEC's motion.

Accordingly,

    IT IS ORDERED that Defendants' Rule 12(b)(6) Motion to Dismiss, or Alternatively, Motion for Summary Judgment [#20] is DENIED;

IT IS FURTHER ORDERED that Plaintiff's Motion for Continuance of Defendants' Motion to Dismiss or Alternatively Motion for Summary Judgment [#23] is DISMISSED as moot.

SIGNED this the 27th day of October 2010.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE